FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 02, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| D9 CONTRACTORS, INC., a Washington corporation,<br><br>    Plaintiff/Counter-Defendant,<br><br>    v.<br><br>INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND; and TIM D. MAITLAND, in his official capacity as a fiduciary,<br><br>    Defendants/Counter-Claimants,<br><br>    v.<br><br>DIVISION 9 CONTRACTORS, INC., a Washington corporation; and MICHAEL O. DETRICK, SR., an individual,<br><br>    Counter-Defendants. | No. 4:20-CV-05140-SAB<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** |

    Before the Court are Plaintiff D9's Motion for Summary Judgment, ECF No. 29, and Defendants International Painters and Allied Trades Industry Pension Fund and Tim D. Maitland's Motion for Summary Judgment, ECF No. 30. The Court held a videoconference hearing on these motions on November 17, 2021. Plaintiff

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 1

was represented by Shea Meehan, who appeared by video. Defendants were represented by Jeffrey Maxwell, who also appeared by video.

The Court initially took the motions under advisement. Then, on December 10, 2021, the Court ordered the parties to submit supplemental briefing. ECF No. 48, which the parties filed on January 28, 2022. ECF Nos. 49, 50.

Having reviewed the original briefing, the supplemental briefing, the parties' arguments, and the caselaw, the Court **grants** Plaintiff's motion and **denies** Defendants' motion.

## Facts

The following facts are drawn from Plaintiff's Complaint, ECF No. 1; Defendants' Answer and Counterclaims, ECF No. 9; and the parties' respective Statements of Facts, ECF Nos. 29-1, 31, and 37.

International Painters and Allied Trades Industry Pension ("IUPAT") is an international labor union—as part of its responsibilities, IUPAT operates a Pension Fund, which is as a multiemployer pension plan. Tim D. Maitland is the Administrator of the Pension Fund and is charged with the collection of withdrawal liability for the pension plan. Under the Employee Retirement Income Security Act ("ERISA") and a subsequent amendment, the Multiemployer Pension Plan Amendments Act ("MPPAA"), an employer who contributes to a multiemployer pension plan, but who then ceases to make contributions, is financially liable for withdrawing from the plan. The rationale behind this is to protect employees covered under these pension plans—otherwise, if an employer could simply withdraw from a multiemployer pension plan without having to pay, this would either force the remaining employers to pay extra or risk leaving the employees with an underfunded pension plan. However, there are exceptions for when an employer can withdraw from a multiemployer pension plan without incurring withdrawal liability.

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 2

Division 9 Contractors, Inc. ("Division 9") was a corporation founded in 1989 by Michael O. Detrick, Sr. that provided construction services primarily in Western Washington. Because Division 9 was a part of the Western Washington Area Agreement for the Drywall Industry, it was required to make contributions to various pension plans, including IUPAT's Pension Fund. Division 9 reported contributions to the Pension Fund from at least 1998 through 2009. However, sometime prior to December 31, 2009, Division 9 ceased making contributions to the Pension Fund. Division 9 then administratively dissolved on July 1, 2014.

D9 Contractors, Inc. ("D9") is a corporation founded in 2012 by Michael O. Detrick, Jr. that provides construction services primarily in Eastern Washington. Plaintiff/Counter-Defendant D9 alleges that Division 9 and D9 are entirely separate corporations—specifically, D9 alleges that (1) Michael O. Detrick, Sr. has never had ownership interest in D9; (2) Michael O. Detrick, Jr. has never had ownership in Division 9; and (3) D9 did not purchase Division 9's assets after Division 9's dissolution. However, IUPAT argues that there is evidence supporting that D9 is a successor of Division 9—for example, IUPAT notes that the two businesses provide the same service, rely on the same methods of production, and have overlapping employees.

On March 6, 2020, IUPAT sent a letter demanding payment of Division 9's withdrawal liability, which it calculated to be $323,099. IUPAT mailed this letter not only to Division 9 to its address in Fall City, Washington, but also to D9 at its address in Pasco, Washington—IUPAT stated that Division 9's withdrawal liability extended to "all businesses under common control" and that it had identified D9 as an "affiliated entity" of Division 9.

On May 12, 2020, Michael O. Detrick, Jr. sent IUPAT a response regarding IUPAT's demand for payment. Specifically, Mr. Detrick, Jr. argued that, because D9 was unrelated to Division 9, D9 could not be liable for Division 9's withdrawal liability.

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 3

On June 10, 2020, IUPAT sent Division 9 and D9 a written notice of default. In the notice, IUPAT stated that—because Division 9 had failed to make its first two interim withdrawal liability payments on May 6, 2020, and June 1, 2020—it would declare the entire amount of the withdrawal liability due.

On July 1, 2020, after reviewing Mr. Detrick, Jr.'s May 12, 2020 response letter, IUPAT informed Mr. Detrick, Jr. and D9 that it was declining to withdraw its demand for withdrawal liability against D9 because "evidence uncovered to date indicates that D9 Contractors, Inc., is either a successor of, or an entity under common control by virtue of family attribution with [Division 9 Contractors, Inc.]."

On August 14, 2020, Plaintiff D9 filed its Complaint against IUPAT. ECF No. 1. Plaintiff sought declaratory relief that D9 is neither under common control with nor a successor to Division 9 Contractors. Plaintiff also sought injunctive relief against IUPAT seeking to enforce or collect Division 9's withdrawal liability from D9. On December 7, 2020, Defendant IUPAT filed its Answer, but also Counterclaims against both D9 and Division 9. ECF No. 9. Specifically, IUPAT and Tim Maitland, in his official capacity as a fiduciary, asserted claims against both D9 and Division 9 for the amount of the withdrawal liability, interest on the withdrawal liability, liquidated damages, and costs and attorney's fees.

D9 and Division 9 filed their Motion for Summary Judgment on September 21, 2021. ECF No. 29. IUPAT and Tim Maitland also filed their Motion for Summary Judgment on September 21, 2021. ECF No. 30. The Court struck the trial date in this case until after the motions for summary judgment are resolved. ECF No. 47.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 4

there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. When parties file simultaneous cross-motions for summary judgment, the court reviews each motion and the appropriate evidentiary material identified in support of the motion separately, giving the nonmoving party for each motion the benefit of all reasonable inferences. *Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 995 (9th Cir. 2017).

## Discussion

IUPAT argues that the Court should find that Division 9 is subject to withdrawal liability because it failed to arbitrate as is required under the MPPAA and thus waived its ability to dispute its withdrawal liability. Division 9 argues that it is not subject to withdrawal liability because it was not required to arbitrate

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 5

under the MPPAA. D9 argues that it is not subject to withdrawal liability because it is unrelated to Division 9.

The Court denies IUPAT's Motion for Summary Judgment. First, the Court finds that IUPAT has not produced sufficient facts to create a material dispute that Division 9 and D9 are the same entity. To create a dispute of material fact, a party "cannot rely on conclusory allegations unsupported by factual data." *See Hansen*, 7 F.3d at 138. Here, both parties concede that that D9 has never been found to be a successor to Division 9 in any past action or proceeding. ECF Nos. 49, 50. Additionally, IUPAT has not alleged sufficiently concrete facts to support its theory that the companies are the same. Instead, IUPAT's argument seems to be primarily based on the similarity of the companies' names, the fact that D9 and Division 9 perform the same kind of work, and the family connection between the companies, which are insufficient to show successor liability. ECF No. 36 at 17-19. Finally, the facts that IUPAT *does* allege in its motion—namely, that D9 and Division 9 have four employees in common—do not rise to the level of a material dispute regarding successor liability. Thus, the Court finds there is no dispute of material fact regarding whether Division 9 and D9 are the same entity.[1]

Second, the Court finds that Division 9 was not validly brought in as a party to this lawsuit. The parties argue that IUPAT brought Division 9 into the lawsuit as a counter-defendant under Fed. R. Civ. P. 20, rather than as a third-party defendant under Fed. R. Civ. P. 14. ECF Nos. 49, 50. Both parties also state that the requirements for permissive joinder under Rule 20 were met in this case because (1) IUPAT's claim for relief was asserted jointly and severally against D9 and Division 9; (2) Division 9's conduct arose out of the same transaction, occurrence,

---

[1] The Court will further discuss the issue of whether D9 and Division 9 are the same entity when it resolves D9 and Division 9's Motion for Summary Judgment *supra*.

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 6

and series of occurrences; and (3) there are questions of law and fact common to both D9 and Division 9. Thus, both parties state that Division 9 is a proper party to this action under Rule 20.

The Court disagrees. Permissive joinder under Fed. R. Civ. P. 20 is a discretionary decision for the Court to make. Though Rule 20 has its own specific requirements, the Court must also consider other relevant factors to determine whether the proposed joinder will comport with the principles of fundamental fairness. *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980) ("[W]hen making a decision whether to allow the permissive joinder of a party, a court should consider such factors as the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action.").

Here, the original lawsuit was filed by D9 against IUPAT, seeking declaratory and injunctive relief. Then, in its Answer, IUPAT asserted counterclaims against *both* D9 and Division 9. However, because D9 did not name Division 9 as a party in its original complaint, IUPAT's "counterclaims" against Division 9 were in fact claims asserted against a party who was not yet in the lawsuit. Moreover, because IUPAT did not file a third-party complaint or a motion to join Division 9, the Court never resolved Division 9's status as a party because it never made a determination regarding whether the addition of Division 9 met the standard for permissive joinder. Thus, the Court finds that IUPAT's claims against Division 9 are procedurally defective and therefore cannot proceed.

Because IUPAT has not alleged sufficient facts to create a material dispute regarding whether Division 9 and D9 are the same entity, IUPAT cannot proceed

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 7

on its claims for withdrawal liability against D9.[2] Additionally, because IUPAT's claims against Division 9 are procedurally defective, IUPAT also cannot proceed on its claims for withdrawal liability against Division 9. Thus, because IUPAT does not have valid claims against either D9 or Division 9, the Court denies IUPAT's Motion for Summary Judgment.

The Court grants D9's Motion for Summary Judgment. First, the Court finds that D9 and Division 9 are separate entities. Courts are to consider seven factors when determining whether to impose successor liability, though the factors are non-exhaustive: whether (1) there has been a substantial continuity of business operations; (2) the new employer uses the same plant; (3) the same or substantially the same work force is employed; (4) the same jobs exist under the same working conditions; (5) the same supervisors are employed; (6) the same machinery, equipment, and methods of production; and (7) the same product is manufactured or the same service is offered. *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1090 (9th Cir. 2015) (citing *NLRB v. Jeffries Lithograph Co.*, 752 F.2d 459, 463 (9th Cir. 1985)).

Here, as discussed above, there are insufficient facts in the record to support that D9 and Division 9 are the same corporation. There is no evidence that there was substantial continuity of business operations between the two—Division 9 ceased making contributions to the Pension Fund in 2009 and officially administratively dissolved in 2014, whereas D9 was founded in 2012. The two companies operated in different geographical regions—specifically Division 9 in Western Washington and D9 in Eastern Washington—and thus presumably did not use the same plant. IUPAT alleges that the two companies only have four

---

[2] Both parties concede that the only way IUPAT can recover withdrawal liability from D9 is to show that Division 9 and D9 are the same entity such that successor liability would apply. ECF No. 29 at 7-8; ECF No. 36 at 14-22.

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** # 8

employees in common, which does not rise to the level of same or substantially similar work force and/or supervisors. Finally—given these factors, as well as the fact that neither owner has ever had ownership interest in the other's company—the mere fact that the two companies provide the same service and rely on the same machinery, equipment, and methods of production is insufficient to show identity of corporate entities. Thus, the Court finds that Division 9 and D9 are separate corporations.

Second, also as stated above, Division 9 was not properly joined and therefore is not a party to this lawsuit. Thus, because IUPAT cannot prove any valid theory of liability against D9—the only opposing party in this case—the Court enjoins IUPAT from trying to collect any alleged withdrawal liability incurred by Division 9 from D9.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 29, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 30, is **DENIED**.

3. The District Court Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close** the file.

**DATED** this 2nd day of March 2022.



Stanley A. Bastian
United States District Judge

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT # 9**